IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,  Plaintiff,  vs.  $25,000 in U.S. Currency,  *Defendant in Rem*. | No. 3:23-CV-456 |

## VERIFIED COMPLAINT FOR FORFEITURE IN REM

Pursuant to Supplemental Rule G(2) of the Federal Rules of Civil Procedure, the United States of America alleges this *in rem* complaint for forfeiture against $25,000 in U.S. currency ("Defendant Property"):

## NATURE OF THE ACTION

1. This is a forfeiture action under 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(C). The United States seeks to forfeit the Defendant Property because it is moneys furnished by any person in exchange for a controlled substance, proceeds traceable to such an exchange, and/or property intended to facilitate such an exchange in violation of 21 U.S.C. §§ 841(a) and/or 846. The Defendant Property is also subject to forfeiture under 18 U.S.C. § 981(a)(1)(C), because it was property which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1952, a specified unlawful activity as defined in 18 U.S.C. §§ 1957(c)(7) and 1961(1).

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this matter under 28 U.S.C. §§ 1345 and 1355(a), and in rem jurisdiction is proper under 28 U.S.C. § 1355(b).

3. Venue in this Court is proper under 28 U.S.C. §§ 1355(b)(1)(A) and 1391(b), because acts or omissions giving rise to the forfeiture occurred in the Northern District of Texas and a substantial part of the events giving rise to the forfeiture occurred in the Northern District of Texas.

## PARTIES

4. The Plaintiff is the United States of America.

5. The Defendant Property is $25,000 in U.S. currency.

6. The Defendant Property was seized at DFW Airport, Texas, on October 5, 2022, from Kevin Lamont Ealy Jr. ("Ealy"), and is currently in the custody and control of the United States Marshals Service in the Northern District of Texas.  Ealy, represented by Leslie Sammis, filed a claim to the Defendant Property in the Drug Enforcement Administration's administrative forfeiture proceeding against the Defendant Property.

7. Ealy was born in 1993 and lives in Dallas, Texas.

## FACTS

**Introduction**

8. The Controlled Substances Act ("CSA") places all substances which are in some manner regulated under federal law into one of five schedules.  This placement is

based upon the substances' medical use, potential for abuse, and safety or dependence liability. Drugs on Schedules I and II of the CSA have a high potential for abuse.

9. Schedule I controlled substances include marijuana, and its main psychoactive compound, tetrahydrocannabinol ("THC").

10. Schedule II controlled substances include oxycodone (Percocet is a combination medication that contains oxycodone).

11. Schedule IV controlled substances include alprazolam (including the brand name drug Xanax).

12. In the United States, only those authorized by the Drug Enforcement Administration ("DEA") can distribute controlled substances. The DEA has not authorized Ealy to distribute any controlled substances.

13. The primary responsibility of the DEA's Dallas/Fort Worth Airport Interdiction HIDTA Group ("Interdiction Group") is to investigate and prevent the use of the DFW Airport and the airlines that service it from perpetrating or facilitating drug trafficking crimes including the transportation of illegal narcotics and the proceeds from the sale of such narcotics.

14. Those trafficking in illegal narcotics often hire couriers to transport narcotics and/or their proceeds. Air travel is one way that traffickers or their couriers accomplish their illegal purpose. Transporting cash obtained through narcotic sales via airplane allows drug traffickers to keep their ill-gotten gains "off the books" and outside

the banking system, which they may believe can make it more difficult for law enforcement to detect their criminal activities.

15. Investigators with the Interdiction Group are specially trained and learn by experience how to identify those who are using the federal aviation system to facilitate narcotic trafficking.

16. Interdiction Group officers know that California is a source state for marijuana and that narcotic traffickers and couriers of narcotic traffickers regularly transport cash proceeds obtained from narcotic sales back to that state. The Los Angeles region in California is a popular source for Marijuana, THC concentrates, and other illegal substances.

**Seizure of the Defendant Property from Ealy at DFW Airport**

17. On October 5, 2022, Supervisory Special Agent ("SSA") Todd Brackhahn, Special Agent ("SA") Sean Kassouf, and task force officers ("TFO") Sandate with the Interdiction Group learned that Ealy, a person they had previously seized $19,985 from on July 6, 2022, was again travelling from DFW Airport to Los Angeles, California (LAX), this time on American Airlines ("AA") Flight 959 from Gate A11. Ealy had no checked luggage and was returning to Dallas, Texas the next day. Through their previous investigation, agents had obtained evidence indicating that Ealy had been purchasing marijuana in California and having it shipped back to Texas via Federal Express.

18. SSA Brackhahn, SA Kassouf, and TFO Sandate were working on the jetway ramp when Ealy was observed in the boarding line for AA 959. The gate agent

had Ealy step to the side and provide his identification when his boarding pass did not scan properly. Ealy had a small black and gray checkered leather backpack. When Ealy reached into the backpack, he retrieved a black leather pouch. As Ealy opened the pouch, he turned it so SA Kassouf, who was standing at the boarding gate, could not see its contents. Ealy provided the requested identification and the gate agent allowed Ealy to walk onto the ramp to board the plane.

19. As Ealy walked towards the plane's door, SSA Brackhahn introduced himself and asked Ealy if he could see his boarding pass and identification. SSA Brackhahn and TFO Sandate stood on the jetway ramp such that they did not obstruct the path of anyone boarding the plane. SSA Brackhahn and TFO Sandate were displaying identification and their police badges. SSA Brackhahn and TFO Sandate were in plain clothing with no weapons or other police equipment visible.

20. Ealy was wearing a red-hooded sweatshirt and black pants. Ealy handed SSA Brackhahn his identification and his boarding pass. SSA Brackhahn noticed that Ealy did not have any checked luggage. SSA Brackhahn handed Ealy's identification and boarding pass TFO Sandate to run warrant checks.

21. While TFO Sandate ran the checks, SSA Brackhahn asked Ealy how long he planned to be in Los Angeles. Ealy claimed that he was going to be there for several days. SSA Brackhahn asked why Ealy was going to Los Angeles for that many days without any additional clothing. Ealy said he was going to buy clothing and purchase new luggage for the return trip. Ealy did not know what hotel he would be staying in.

22.Ealy also said he was working as a rapper and was going to Los Angeles to visit one of his friends, a rapper that goes by the moniker "DX."

23.SSA Brackhahn asked Ealy if he was transporting any drugs, weapons, or large sums of US Currency. Ealy said he had $18,000 in his carryon bag. SSA Brackhahn asked Ealy where the money came from. Ealy said he had cashed a check he received from a friend at a bank. SSA Brackhahn asked Ealy if he had a way to verify that. Ealy said he could show SSA Brackhahn his bank account. Ealy retrieved a cell phone from his front sweatshirt pocket. SSA Brackhahn asked if he could look at the phone. The battery on the phone was about to run out and the phone appeared to be ready to turn off. Ealy said he needed to charge the phone.

24.SSA Brackhahn noticed Ealy had another phone in the same pocket. SSA Brackhahn asked Ealy if he could see his other phone. Ealy pulled the phone out and handed it to SSA Brackhahn.

25.SSA Brackhahn asked Ealy if he used any kinds of drugs or if he used marijuana. Ealy said that he did not because he was on probation. SSA Brackhahn asked Ealy if his bag had been around any kinds of drugs. Ealy said no.

26.SSA Brackhahn told Ealy that he was going to have a police drug detection canine check the bag. Ealy said there should be no problem because he does not use drugs. SSA Brackhahn called for the canine to come upstairs from the luggage area. Ealy's demeanor changed when SSA Brackhahn called for the canine. Ealy then volunteered that his girlfriend uses marijuana.

USA Complaint - Page **6** of **18**

27. Ealy asked why the officers were checking his bag. SSA Brackhahn told Ealy he had information that Ealy is a drug trafficker. Ealy asked how SSA Brackhahn knew that. SSA Brackhahn told Ealy he was aware of Ealy's previous drug convictions and a previous seizure of cash from Ealy at DFW Airport. SSA Brackhahn also explained that data from the phone investigators seized from him during the previous seizure included numerous messages related to drug trafficking and pictures of drug trafficking activity. Ealy did not respond to this allegation.

28. Ealy told SSA Brackhahn that he had an attorney and SSA Brackhahn was going to give him his money back. SSA Brackhahn said that he was not giving the money back. He explained that there was a process that had to be followed and that Ealy needed to get that coordinated with his attorney. Ealy asked SSA Brackhahn how long it would be before his money was returned. SSA Brackhahn advised it could be several months before the process was completed and a decision made.

29. TFO Sandate told SSA Brackhahn that Ealy had outstanding traffic warrants. SSA Brackhahn advised Ealy of the warrants and told him he was not going to be arrested at that time. Ealy said he would take care of the warrants.

30. At that point, Officer Lappe and canine Maverick arrived. Officer Lappe is a certified handler of Maverick, a specially trained canine. Maverick is a passive alert canine that sits or shows a noticeable difference in behavior when indicating to the presence of a trained odor. Maverick is a certified narcotics odor detection canine that is trained to detect illicit odors of cocaine, methamphetamine, heroin, MDMA, and their

derivatives as well as marijuana. Officer Lappe observed Maverick give a positive alert for the presence of an odor of narcotics on or coming from Ealy's backpack.

31. SSA Brackhahn told Ealy he was seizing the backpack along with Ealy's cellphones. SSA Brackhahn also told Ealy that if he allowed SSA Brackhahn to search the backpack, then he could take the backpack with him. If he refused, then the investigators would retain the backpack so they could obtain a search warrant.

32. Ealy told SSA Brackhahn he could search the backpack. Once SSA Brackhahn picked up the backpack, he could smell the odor of marijuana. Special Agent Kassouf could also smell marijuana coming from the backpack.

33. SSA Brackhahn searched the backpack. During the search, SSA Brackhahn found one pair of light workout-style pants with three bundles of U.S. currency in a front pocket, two bundles of U.S. currency in the front pocket of the backpack, and one large bundle of U.S. currency in a small black leather bag that was inside of the large compartment of the backpack.

34. All the bundles were rubber banded and did not appear to have been recently withdrawn from a bank. In the investigators' experience, those involved in drug trafficking frequently package their drug proceeds or currency intended to purchase controlled substances in rubber-banded bundles. The bundling was also consistent with how other narcotic traffickers interdicted at DFW Airport have packaged their drug proceeds for transport.

35. Based on probable cause to believe it was connected to drug trafficking, the Interdiction Group seized the currency found in Ealy's backpack. The seized currency totaled $25,000 and included 203 $100 dollar bills, 16 $50 dollar bills, 174 $20 dollar bills, and 42 $10 dollar bills. In the TFOs' experience, possession of such a large amount of currency is not typical of legitimate airport travelers.

36. Based on probable cause to believe that they contained evidence of Ealy's involvement with drug trafficking, the Interdiction Group seized two cell phones that Ealy brought out from his front sweatshirt pocket including a green Apple iPhone ("Green Phone") and a blue Apple iPhone ("Blue Phone").

37. Inside Ealy's backpack, SSA Brackhahn also found a FedEx receipt for a 33-pound package sent from Hawthorne, California to Dallas, Texas on September 19, 2022. Hawthorne is a short distance from Los Angeles International Airport ("LAX"). Location data on Ealy's XXX Phone (DRW3CM69K2) indicates it was at LAX and in Hawthorne, California on September 19, 2022.

38. Officers told Ealy he was free to board the plane and continue his travels. Ealy elected to discontinue his trip and was escorted off the jet bridge by American Airlines employees. As he departed, Ealy kept yelling that the dog did not alert.

39. Investigators checked the Texas Workforce Commission ("TWC") database to see if the TWC had any wage records for Ealy. The TWC is a government agency in Texas that provides unemployment benefits. In aid of that purpose, Texas requires

employers to report to TWC wages paid to employees. TWC did not have any wage records for Ealy.

### Discovery of Data Related to Drug Trafficking on Ealy's Phones

40. Pursuant to a Dallas County Municipal Court search warrant authorized on October 10, 2022, Officer Tull with the Irving Police Department in Irving, Texas, extracted the data in Ealy's phones. Analysis of the phone data revealed numerous text messages and other media related to trafficking in controlled substances.

41. Data on Ealy's XXX Phone (DRW3CM69K2) showed that he took several flights between Dallas/Fort Worth ("DFW") and Los Angeles, California ("LAX"):

| Date | Originating Place | Destination | Ticket Cost |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
| 9/18/2022 | DFW | LAX | $617.20 |
| 9/19/2022 | LAX | DFW | $617.20 |
| 10/5/2022 | DFW | LAX | AAdvantage |
| 10/6/2022 | LAX | DFW | $11.20 |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

42.

43. Many of the messages on Ealy's phone used code or slang words. Based on training and experience, investigators know that those involved in drug trafficking frequently communicate in slang or code words over electronic devices such as through

phone messaging apps and in text messages when communicating about buying and selling narcotics.

44. A sampling of the many messages on the phone indicating Ealy's involvement with trafficking include:

| Instagram Message | | | |
|---|---|---|---|
| Direction | Date | Time | Message |
| Incoming | 6/6/2022 | 8:04:54 PM | Teli? |
| Incoming | 6/6/2022 | 8:05:09 PM | Exotics? [referring to a type of marijuana strain] |
| Outgoing | 6/6/2022 | 10:25:16 PM | [shortened website address] |
| Outgoing | 6/6/2022 | 10:25:42 PM | Exotics come in a few days I just got good gas ["gas" is slang for strong marijuana] in right now checc me out good ticcets [referring to prices to purchase marijuana] |

| Telegram Message | | | |
|---|---|---|---|
| Direction | Date | Time | Message |
| Incoming | 9/9/2022 | 2:16:17 PM | What kinda gas u got in |

**Ealy's Criminal History Involving Controlled Substances**

45. On November 15, 2018, Ealy was indicted in the 199th District Court in Collin County, Texas, on a charge of Manufacture/Delivery of a Controlled Substance in Penalty Group 1, a first-degree felony, in *The State of Texas vs. Kevin Lamont Ealy*, case number 199-84056-2018. The offense occurred on or about May 12, 2018. On April 11, 2019, Ealy was convicted on the charge, given a suspended sentence of ten years custody in the Texas Department of Criminal Justice, and placed on probation for six years.

46. On January 21, 2020, Ealy was indicted in the 282nd District Court in Dallas County, Texas for Possession of a Controlled Substance Penalty Group 1-Cocaine, a first-degree felony, in *The State of Texas vs. Kevin Lamont Ealy Jr*, case number F-1825461. The offense occurred on or about September 26, 2018. On May 17, 2021, Ealy pleaded guilty, and the Court entered an Order of Deferred Adjudication with three years of community supervision.

**Prior DFW Airport Seizure of Currency from Ealy**

47. A prior similar seizure of currency at DFW Airport from a checked bag belonging to Ealy shows Ealy's knowledge, intent, and absence of mistake for the July 6, 2022 seizure. On April 5, 2022, Judge Ada Brown entered an order of default against Ealy and a final judgment forfeiting $14,939 to the United States in *United States v. $14,939 in U.S. Currency*, No. 3:22-CV-065-E (Northern District of Texas). Ealy was notified of this forfeiture proceeding but he did not file a claim or otherwise appear to contest the forfeiture. Ealy was also contacted by the U.S. Attorney's Office and requested to provide documentation Ealy promised to provide regarding the source of the funds, but Ealy did not provide such documentation. According to the complaint in that case, on August 10, 2021, task force officers with Homeland Security Investigations identified two pieces of hard-case, checked luggage belonging to Ealy and bound for Los Angeles, California (LAX) that contained $14,939. A narcotic-sniffing canine detected the odor of narcotics on the luggage, which the officers themselves could smell. In one piece of the checked luggage, officers only found "a white t-shirt with green leafy flakes

on it, a torn piece of plastic that appeared to be part of a plastic bag that is commonly used to package illegal narcotics, and a dryer sheet." In the other suitcase, officers found a black t-shirt, a pair of flip flop sandals, and a pair of red basketball shorts that contained the $14,939 in its pockets. A test of the currency using a D4D Aerosol Mobile Detection Kit showed a positive result for contact with cannabis.

**FIRST CAUSE OF ACTION**
**21 U.S.C. § 881(a)(6)**
**(forfeiture of property related to drug trafficking)**

48.     The United States reasserts all allegations previously made.

49.     Under 21 U.S.C. § 881(a)(6), "moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of" 21 U.S.C. § 801 et seq. are subject to forfeiture.

50.     Under 21 U.S.C. § 841(a), it is "unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." An attempt or conspiracy to do the same is also prohibited by 21 U.S.C. § 846.

51.     As set forth above, the Defendant Property is moneys furnished by any person in exchange for a controlled substance, proceeds traceable to such an exchange, and/or property intended to facilitate such an exchange in violation of 21 U.S.C. §§

841(a) and/or 846. This property is therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

**SECOND CAUSE OF ACTION**
**18 U.S.C. § 981(a)(1)(C)**
**(forfeiture related to violation of the Travel Act)**

52. The United States reasserts all allegations previously made.

53. Under 18 U.S.C. § 981(a)(l)(C), any property which constitutes or is derived from proceeds traceable to an offense constituting a "specified unlawful activity," or a conspiracy to commit such offense, is subject to forfeiture to the United States.

54. Under 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1), interstate travel or transportation in aid of racketeering enterprises in violation of 18 U.S.C. § 1952 is a specified unlawful activity.

55. 18 U.S.C. § 1952(a) prohibits, inter alia, any individual who uses "any facility in interstate or foreign commerce,":

> with the intent to –
>
> (1) distribute the proceeds of any unlawful activity; or [ ]
> (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity"

from thereafter performing or attempting to perform the conduct described in subparagraphs (1) and (3) above.

56. 18 U.S.C. § 1952(b) specifically includes within the definition of "unlawful activity" "any business enterprise involving . . . narcotics or controlled substances (as defined in section 102(6) of the Controlled Substances Act)."

USA Complaint - Page **14** of **18**

57. As set forth above, the Defendant Property is property which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1952. This property is therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(l)(C).

## REQUEST FOR RELIEF

WHEREFORE, the United States respectfully asserts that the Defendant Property is forfeitable to the United States under 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(C).

The United States further requests:

A. That, pursuant to the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Rule G(3)(b)(ii), the Clerk of the Court issue a Summons and Warrant of Arrest *in Rem* as to the Defendant Property.

B. Publication of notice of this forfeiture action be made by posting notice on the official government internet website, www.forfeiture.gov, for at least 30 consecutive days, in accordance with Supplemental Rule G(4)(a)-(5).

C. That Notice of this action be given to all persons known or thought to have an interest in or right against the Defendant Property;

D. In order to avoid forfeiture of the Defendant Property, all persons having any interest in or right against the Defendant Property be advised by the notice to timely file in this court a verified claim identifying the interest or right to the Defendant Property as required by Supplemental Rule G(5)(a)

   and 18 U.S.C. § 983(a)(4)(A); and to file an answer to this Complaint for Forfeiture or motion under Fed. R. Civ. P. 12 in the manner required by the Supplemental Rule G(5)(b) and 18 U.S.C. § 983(a)(4)(B).  Further, any person filing a verified claim of interest or right and/or an answer shall serve a copy on Dimitri N. Rocha, Assistant United States Attorney, 1100 Commerce Street, Suite 300, Dallas, Texas 75242.

E. Pursuant to Rule G(5)(a), the claim must (A) identify the specific property claimed; (B) identify the claimant and state the claimant's interest in the property, and (C) be signed by the claimant under penalty of perjury.  Any person who asserts an interest in the Defendant Property must filed a verified claim within 35 days after the date the notice is sent if the notice is delivered by mail, or within 35 days of the date of delivery if the notice is personally served and not sent by mail.

F. Any person who files a verified claim must then file an answer to the complaint or a motion under Fed. R. Civ. P. 12 within 21 days of filing the verified claim.

G. That a Judgment of Forfeiture be decreed against the Defendant Property forfeiting all right, title, and interest in it to the United States;

H. That upon the issuance of a Judgment of Forfeiture, the United States Marshals Service or its delegate be able to dispose of the Defendant Property according to law; and

    I.    That the United States receive its costs of court and all further relief to which it is entitled.

DATED this 1st day of March, 2023.

                        LEIGHA SIMONTON
                        UNITED STATES ATTORNEY

                        */s/ Dimitri N. Rocha*
                        DIMITRI N. ROCHA
                        Assistant United States Attorney
                        Florida Bar No. 693332
                        1100 Commerce Street, Third Floor
                        Dallas, Texas 75242-1699
                        ☎(214) 659-8650 | 🖷(214) 659-8803
                        ✉ Dimitri.Rocha@usdoj.gov

                        ATTORNEYS FOR PLAINTIFF

## VERIFICATION

I am a Special Agent with the Drug Enforcement Administration ("DEA"). As a Special Agent with the DEA, my duties and responsibilities include participating in the investigation and prosecution of persons who violate federal laws.

I have read the contents of the foregoing Complaint for Forfeiture *In Rem* and verify under penalty of perjury pursuant to 28 U.S.C. § 1746 that the factual statements contained therein are true and correct to the best of my knowledge and belief.

Executed on this _1st___ day of March, 2023.

                                         _____
                                         Sean D. Kassouf, Special Agent
                                         Drug Enforcement Administration